UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

LORENZO FOSSELMAN, JR.,

    Plaintiff,

    v.

J. CAROPRESO, J. CELAYA, C. BARROGA, AND V. SOLIS,

    Defendants.

No. C 09-0055 PJH (PR)

**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT; REFERRAL FOR MEDIATION**

This is a civil rights case filed pro se by a state prisoner. The defendants have renewed their motion for summary judgment. Plaintiff has opposed the motion, and defendants have filed a reply. The motion is ready for decision.

## BACKGROUND

Plaintiff contends that defendant Caropreso used excessive force against him, partly in retaliation for writing grievances and for filing a federal lawsuit against him, and that the other defendants placed him in administrative segregation in retaliation for the grievances and lawsuit. Defendants filed a motion for summary judgment and moved to stay discovery pending resolution of the qualified immunity claim. In an order entered on March 18, 2011, the court denied defendants' motions to stay discovery and for summary judgment, granted in part plaintiff's motion to compel, and denied plaintiff's motion for appointment of counsel. The motion for summary judgment was denied because plaintiff asserted that he required more time to obtain the necessary materials to oppose it. *See* Fed. R. Civ. P. 56(d). The denial was with leave to renew the motion by reference, which defendants have done.

## DISCUSSION

**I.     Standard of Review**

Summary judgment is proper where the pleadings, discovery and affidavits show that there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Material facts are those which may affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute as to a material fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party. *Id.*

The moving party for summary judgment bears the initial burden of identifying those portions of the pleadings, discovery and affidavits which demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Nissan Fire & Marine Ins. Co. v. Fritz Cos.*, 210 F.3d 1099, 1102 (9th Cir. 2000). When the moving party has met this burden of production, the nonmoving party must go beyond the pleadings and, by its own affidavits or discovery, set forth specific facts showing that there is a genuine issue for trial. If the nonmoving party fails to produce enough evidence to show a genuine issue of material fact, the moving party wins. *Id.*

**II.    Analysis**

    **A.     Caropreso**

Plaintiff contends that Caropreso used excessive force against him and that the force was used in retaliation for his having filed grievances and a civil rights case in which Caropreso is a defendant. *See Fosselman v. Evans*, C 07-2606 PJH (PR).

        **1.     Excessive Force**

The treatment a prisoner receives in prison and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment. *Helling v. McKinney*, 509 U.S. 25, 31 (1993). "After incarceration, only the unnecessary and wanton infliction of pain . . . constitutes cruel and unusual punishment forbidden by the Eighth Amendment." *Whitley v. Albers*, 475 U.S. 312, 319 (1986) (ellipsis in original) (internal quotation and citation omitted). The core judicial inquiry when prison officials stand accused of using excessive force in violation of the Eighth Amendment is whether force was applied in a

2

good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm.  *Hudson v. McMillian*, 503 U.S. 1, 6 (1992).

The following facts are undisputed except where indicated.  On January 31, 2008, plaintiff was standing in a laundry exchange line in front of the laundry room in Facility C of Salinas Valley State Prison.  Caropreso approached him and asked him why he was in the line and ordered him back to his assigned yard.  Plaintiff asked Caropreso why he was "harassing" him.  Caropreso says that plaintiff said he was not going to go back to his yard.  Decl. Caropreso at ¶¶ 8, 11.  Fosselman says that "at no point . . . did I refuse a direct order."  Decl. Fosselman at ¶ 6.  Plaintiff told Caropreso to use his radio to check whether plaintiff was authorized to be in the laundry line.  Decl. Fosselman at ¶ ¶ 4-5.  Caropreso then ordered plaintiff to turn around to be handcuffed, which he did.

Caropreso began escorting plaintiff away; after a few steps, plaintiff stopped.  Plaintiff contends that Caropreso had put the cuffs on tight and was yanking him forward aggressively, points Caropreso does not dispute, so plaintiff had to stop to regain his balance.  Decl. Fosselman at ¶ 5.  Caropreso says Fosselman stopped, Caropreso ordered him to keep walking, Fosselman pulled away from him by twisting his body rapidly, and when Caropreso regained his grasp, continued struggling.  Decl. Caropreso at ¶ ¶ 16-21.  Fosselman contends that "at no point did I physically resist the guard," Decl. Fosselman at ¶ 6, a position that is supported by declarations from two other prisoners, Decl. Belony (Ex. A to Fosselman Decl.) at ¶ 5; Decl. Banks (Ex. C to Fosselman Decl.) at ¶ 2.

Caropreso says that at this point he "was forced to use my body weight to force Fosselman to the ground . . . .  We both went down to the ground."  Decl. Caropreso at ¶ 21.  Plaintiff's version is that Caropreso "lifted me off my feet from behind [i]n what apparently was a jujitsu martial arts move and body slammed me head first to the concrete pavement. . . . all of Caropreso's body weight came crashing down on top of me."  Decl. Fosselman at ¶ 5; *see also* Decl. Belony (Ex. A to Fosselman Decl.) at ¶ 5; Decl. Banks (Ex. C to Fosselman Decl.) at ¶ 2.  Other officers arrived and Caropreso disengaged.

The following analysis is based upon those of the facts set out above that are

undisputed, and where the facts are disputed, upon plaintiff's version.  *See Leslie v. Grupo ICA*, 198 F.3d 1152, 1158 (9th Cir. 1999) (if evidence produced by moving party conflicts with evidence produced by nonmoving party, judge must assume truth of non-moving party's evidence with respect to that fact).

There are two points on which it might be contended that plaintiff's evidence is conclusory and thus not sufficient to generate a genuine dispute of material fact.  *See Rodriguez v. Airborne Express*, 265 F.3d 890, 902 (9th Cir. 2001) ("self-serving affidavits are cognizable to establish a genuine issue of material fact so long as they state facts based on personal knowledge and are not too conclusory.").  They are : (1) Caropreso's contention that plaintiff refused a direct order to return to his yard, contested only in plaintiff's assertion that "at no point . . . did I refuse a direct order;" and (2) Caropreso's contention that plaintiff resisted the escort by twisting his body back and force, briefly breaking Caropreso's hold, contested by plaintiff's assertion (echoed in the declarations of two other prisoners, but in the same terms), that "at no point did I physically resist the guard."

The decisive point in deciding whether plaintiff's assertions are conclusory is whether they could have been phrased in more specific detail, as indeed they could.  For instance, plaintiff could have said that Caropreso did not give him an order to return to his yard, or provide the exact language and contend that it was not a direct order, or assume the order was given, provide the facts of his reaction, and argue that the reaction did not amount to a refusal.  Plaintiff's allegation regarding the direct order therefore is conclusory and not sufficient to generate a genuine dispute of fact on that point.  In ruling on the motion, the court will treat Caropreso's claim that plaintiff refused the direct order as undisputed.

As to the second point, whether plaintiff resisted the escort, Caropreso again provides some detail, saying that "Fosselman then pulled away from me.  Fosselman broke my grasp by twisting his upper body from left to right, in a rapid motion.  [¶ 19] To stop his resisting and regain control of Fosselman, I was forced to place[] both my hands on

4

Fosselman's right bicep[]. [¶ 20] Fosselman continued tugging from left to right in an aggressive manner. [¶ 21] Fosselman continued to struggle and pull away from me." Decl. Caropreso at ¶ ¶ 18-21. Again plaintiff could have provided more specific denials than his general " "at no point did I physically resist the guard" in response to these fact contentions. In ruling on the motion, the court will treat Caropreso's claim that plaintiff attempted to escape control and struggled as undisputed.

In determining whether the use of force was for the purpose of maintaining or restoring discipline, or for the malicious and sadistic purpose of causing harm, a court may evaluate the need for application of force, the relationship between that need and the amount of force used, the extent of any injury inflicted, the threat reasonably perceived by the responsible officials, and any efforts made to temper the severity of a forceful response. *Hudson*, 503 U.S. at 7.

On these facts, undisputed or plaintiff's version where disputed, there was a need for force because plaintiff was physically resisting the correctional officer's attempt to escort him back to his yard and there were other prisoners nearby who might have become involved. The relationship between the need for force and the amount used is another matter, however. Because there is a genuine dispute of fact regarding how much force was used, the court treats plaintiff's version as true; and that version, supported by the declarations of other prisoners as well, is that Caropreso lifted the handcuffed prisoner from the ground and slammed his body, head first, into the concrete. Taking these allegations as true, this was significantly more force than the situation required.

The third *Hudson* factor is the amount of injury inflicted; it is undisputed that plaintiff was bleeding from the fall, and that medical records show abrasions to his cheek, chin, and shoulder. There thus were some injuries, but not particularly significant ones, especially given plaintiff's contention that he was body-slammed head first into concrete.

As to the last two factors, the threat reasonably perceived by Caropreso was significant, in that plaintiff was attempting to escape control in a situation where other inmates were about and might become involved. And there is no evidence of any attempt

5

to temper the severity of the response.

This is a close question, but the court concludes that summary judgment cannot be granted on this claim with the record as it stands. A reasonable jury could find that Caropreso used more force than was necessary in an admittedly serious situation, and consequently that the force was used "maliciously and sadistically to cause harm." *Hudson*, 503 U.S. at 6. Summary judgment will be denied on this claim.

### 2. State Law Claim

Plaintiff alleged in his complaint that Caropreso's actions constituted the tort of assault and battery under state law. Plaintiff points out in his opposition to the motion for summary judgment that Caropreso does not argue that he should be granted summary judgment on the state law claim. In the reply, Caropreso notes that in its screening order the court said that the excessive force and retaliation claims were sufficient to proceed, not mentioning the state law claim. The court did not dismiss the state law claim, and the entire complaint was, of course, served on defendants. The state law claim remains in the case.

### 3. Retaliation

Plaintiff contends that Caropreso used excessive force – throwing him headfirst to the ground – in retaliation for his having filed a lawsuit in which Caropreso is a defendant and in retaliation for filing grievances.

Caropreso says in his declaration that he "did not say anything to Fosselman about his lawsuit or his inmate appeals." Decl. Caropreso at ¶ 24. Fosselman says that after Caropreso threw him to the ground, Caropreso said, with his knee in plaintiff's back, "that'll teach you to stop writ[]ing 602's [grievances] and lawsuits." Decl. Fosselman at ¶ 8. This allegation is confirmed by an inmate who saw the incident, who has Caropreso saying "[y]ou better not file another lawsuit against me or it's going to wors[e] than this." Decl. Belony (Ex. A to Fosselman Decl.) at ¶ 5.

///

There is a genuine dispute of material fact regarding whether Caropreso's actions

against plaintiff were motivated by a desire to retaliate for plaintiff's exercise of his right to file lawsuits and grievances. Summary judgment will be denied on this claim.

### B.     Placement in Administrative Segregation

Plaintiff asserts that defendants Celaya, Barroga, and Solis caused him to be held in administrative segregation in retaliation for his lawsuit and grievances.

Celaya, Barroga, and Solis have provided evidence that such a placement is standard procedure following claims of staff misconduct, and is required by regulations. Decl. Fritz at ¶ ¶ 4-10. They contend that Fosselman has no evidence that he was placed in segregation "because of" his lawsuit and grievances, an element of a constitutional retaliation claim. *See Rhodes v. Robinson*, 408 F.3d 559, 567-68 (9th Cir. 2005) ("Within the prison context, a viable claim of First Amendment retaliation entails five basic elements: (1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal.") (footnote omitted). The burden thus shifts to plaintiff to show that a genuine dispute of fact exists as to the motivation for his being segregated. *See* Fed. R. Civ. P. 56(e); *Nissan Fire & Marine*, 210 F.3d at 1102.

The only relevant fact that plaintiff provides to support his conclusion that the segregation was retaliatory is that the defendants in his previous suit, "including Lt. Celaya," had been served with process in that case "1 month prior." Decl. Fosselman at ¶ 11. The timing of an allegedly retaliatory act can be circumstantial evidence of retaliatory motive, *Bruce v. Ylst*, 351 F.3d 1283, 1288-89 (9th Cir. 2003), but when service was a month earlier, was only upon one of the three defendants alleged to have retaliated, and there was a major intervening event (the use of force by Caropreso), this coincidence in timing is not enough to generate a genuine dispute of fact for a jury. And a classification committee's decision to give him a non-adverse transfer to another institution, purportedly for a "fresh start," sheds no light on the motive for the administrative segregation. Summary judgment will be granted on this claim.

**CONCLUSION**

For the foregoing reasons, the motion for summary judgment by defendant Caropreso (document number 39 on the docket) is **DENIED**. The motion for summary judgment by defendants Celaya, Barroga, and Solis (document 39) is **GRANTED**.

This case is referred to Magistrate Judge Nandor Vadas pursuant to the Pro Se Prisoner Mediation Program. Judge Vadas shall conduct mediation proceedings and file a report thereafter. The proceedings are confidential and no statement made therein will be admissible in any proceedings in the case, unless the parties otherwise agree. In view of the referral, further proceedings in this case are **STAYED**

If the case is not settled, the court will enter a new scheduling order for further proceedings. The clerk shall mail a copy of this order to Magistrate Judge Vadas in Eureka, California.

**IT IS SO ORDERED.**

Dated: March 12, 2012

PHYLLIS J. HAMILTON
United States District Judge

G:\PRO-SE\PJH\CR.09\FOSSELMAN0055.MSJ2.wpd